## L. R. ARMSTRONG v. AETNA INSURANCE COMPANY.

(Filed 14 January, 1959.)

**1. Attachment § 7—**

The filing of bond by the defendant to release his property from attachment does not bar defendant from challenging the validity of the attachment. G.S. 1-440.39(d).

**2. Attachment § 11—**

Where, in plaintiff's action *ex contractu* against a domestic corporation, attachment is ordered *ex parte* on plaintiff's allegation that defendant was secreting its property with intent to defraud, and defendant files answer denying all allegations upon which the right of attachment was based, a consent judgment thereafter entered that plaintiff recover the sum originally demanded, but which does not determine the validity of the attachment or direct that defendant's bond should be liable for the payment of the judgment, constitutes a simple judgment for the amount specified and precludes recovery by plaintiff against the surety on defendant's bond.

**3. Judgments § 1—**

A consent judgment is the contract of the parties entered upon the records with the approval and sanction of a court of competent jurisdiction, and such contracts cannot be modified or set aside without the consent of the parties thereto, except for fraud or mistake, and in order to vacate such judgment an independent action must be instituted.

APPEAL by plaintiff from *Seawell, J.,* February Term, 1958, of BRUNSWICK.

Civil action to recover on $6,000.00 bond executed by Harris & Harris Construction Company, Inc. (hereafter called Construction Company), as principal, and by defendant, as surety, filed in plaintiff's prior action against the Construction Company, heard on an Agreed Statement of Facts.

The pertinent facts in said prior action, entitled *"L. R. Armstrong, Plaintiff, v. Harris & Harris Construction Company, Inc., Defendant,"*

are set forth in the following numbered paragraphs.

1. Summons issued and complaint filed on June 4, 1956, were served on the Construction Company on June 6, 1956.

2. Plaintiff alleged that the Construction Company, general contractor on a street paving job, owed him $2,931.15 for labor performed and equipment furnished in compliance with his subcontract. He alleged, upon information and belief, "that defendant, a domestic corporation, through its officers, servants, and employees has assigned, disposed of, or secreted or is about to assign, dispose of, or secrete its property with intent to defraud its creditors and particularly this plaintiff," in that "defendant, through its officers, obtained payment for the paving and construction work performed by the plaintiff through misrepresentation of facts and said officers have also made telephone withdrawals of funds in defendant's name on deposit with the Southport, North Carolina, branch of the Waccamaw Bank & Trust Company."

3. The clerk, reciting therein, *inter alia,* that plaintiff had executed and delivered the required Attachment Bond, ordered that the sheriff of Brunswick County attach all of the Construction Company's property in said county. Actually, the condition of the $1,000.00 bond for attachment, executed by plaintiff and a surety, was as follows: ". . . to be void, however, if the within named plaintiff shall pay the defendant all such costs as the defendant may recover of the plaintiff in this action." Plaintiff, with other surety, executed a separate $200.00 cost bond in usual form.

4. The said order of attachment was issued, *ex parte,* on June 4, 1956. Pursuant thereto, and prior to his return of June 12, 1956, the sheriff levied on and took into his possession two (described) trucks and served notice of levy (and summons to garnishee) on (1) the Cashier of the Waccamaw Bank & Trust Company, Southport, and (2) the Mayor and Board of Aldermen of Southport.

5. Answers were filed by said garnishees on June 18, 1956; but prior thereto, to wit, on June 15, 1956, the clerk had "dismissed" the attachment when the Construction Company, as principal, and Aetna Insurance Company, defendant herein, as surety, executed the bond dated June 13, 1956, on which the present action is based, the provisions thereof, after recitals, being as follows: "NOW, THEREFORE, we, Harris & Harris Construction Company, Inc., and Aetna Insurance Company, undertake in the sum of SIX THOUSAND ($6,000) DOLLARS that if the said property be returned to the defendant it shall be delivered to the plaintiff with damages for its deterioration and detention, together with the costs of this action, if such delivery adjudged and can be had, and if such delivery cannot for any cause

be had, that the plaintiff shall be paid such sum as may be recovered against the defendant for the value of the property at the time of the wrongful taking or detention, together with the costs of this action not exceeding the sum hereinabove set forth."

6. Later, but in apt time, the Construction Company answered the complaint. It denied categorically the allegations of paragraphs 8 and 9 of the complaint, the only portions thereof purporting to allege facts constituting a ground for attaching the Construction Company's property. It denied that it was indebted to plaintiff; and, by way of cross action, alleged that plaintiff was indebted to it in the amount of $2,740.11 on account of losses it sustained because of the rejection of plaintiff's negligent work. It prayed, *inter alia*, "that any order of attachment which might have been issued in this cause be vacated."

7. In reply, plaintiff denied the allegations of the Construction Company's cross action, prayed that it be dismissed and "that the plaintiff recover of the defendant in accordance with the prayer contained in his complaint filed in this action." No allegation in plaintiff's reply refers to the attached property or to the bond given for the release thereof.

8. Judgment dated October 16, 1956, signed by Judge Burgwyn, bearing the written consent of the parties and their counsel, *verbatim*, was as follows:

"This cause coming on to be heard and being heard before his Honor W. H. S. Burgwyn, Judge presiding at the October 1956 Term of the Superior Court of Brunswick County and it appearing to the court from the statement of counsel for the parties hereto that all matters of controversy set out in the pleadings have been agreed upon by the said parties, and that the defendant has agreed to pay to the plaintiff and the plaintiff has agreed to accept the sum of $2,931.15 and the costs of this action in full accord and satisfaction thereof;

"Now, therefore, by consent, it is ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover of the defendant the sum of $2,931.15 and the costs of this action to be taxed by the Clerk."

9. A transcript of said judgment was docketed December 17, 1956, in the office of the Clerk of the Superior Court of Durham County, the county in which the Construction Company had its principal office and place of business.

10. Executions issued December 31, 1956, to the sheriffs of Brunswick and Durham Counties, were returned, unsatisfied.

On July 9, 1957, plaintiff instituted the present action against Aetna Insurance Company, to recover *on the bond* set forth in paragraph 5 above the amount due him by the Construction Company

under the terms of the consent judgment set forth in paragraph 8 above plus the costs of this action.

On the stipulated facts, the court entered judgment "that the plaintiff have and recover nothing of the defendant by reason of the matters and things alleged in the complaint and that the defendant recover its costs to be taxed by the Clerk from the plaintiff."

Plaintiff excepted and appealed.

*James C. Bowman, Edgar L. Yow, Carter & Murchison and James C. Fox for plaintiff, appellant.*

*Fletcher & Lake for defendant, appellee.*

BOBBITT, J.  Decision herein depends upon the legal significance of what occurred in plaintiff's prior action against the Construction Company.

The clerk's *ex parte* order of attachment was properly issued under G.S. 1-440.12 *if* plaintiff's verified complaint and bond for attachment met the requirements of G.S. 1-440.11 and G.S. 1-440.10, respectively.

The Construction Company, by answer (1) denied all allegations on which plaintiff based his alleged right of attachment and (2) moved to vacate the clerk's *ex parte* order of attachment. It thereby challenged the legal sufficiency of plaintiff's verified complaint and bond for attachment; and, in addition, it raised issues of fact for determination by the court or by a jury in accordance with G.S. 1-440.36. The fact that it had obtained a discharge of the clerk's *ex parte* order of attachment by filing the $6,000.00 bond, with defendant herein as surety, did not bar the Construction Company from challenging the validity of the attachment. G.S. 1-440.39 (d).

It is noted that plaintiff did not amend or ask leave to amend his verified complaint or bond for attachment.

When the prior action came on for hearing before Judge Burgwyn, the matters in controversy, properly determinable therein, related (1) to plaintiff's action, (2) to the validity of the attachment, and (3) to the Construction Company's cross action.

Plaintiff, had he so elected, could have undertaken to establish (1) the legal sufficiency of his verified complaint and bond for attachment and (2) facts essential to the validity of the attachment. *Rushing v. Ashcraft,* 211 N.C. 627, 191 S.E. 332. He did not do so. On the contrary, in settlement of "all matters of controversy set out in the pleadings," it was adjudged, by consent of the parties, "that the plaintiff have and recover of the defendant the sum of $2,931.15 and the costs of this action to be taxed by the Clerk."

The consent (final) judgment, as stated therein, was the result of a settlement of all matters in controversy. All that plaintiff acquired thereby was a simple judgment against the Construction Company for a specified amount. It does not purport to confer on plaintiff any rights whatsoever either to the attached property or with reference to the bond given for the release thereof. Indeed, the issuance of executions for the collection of said judgment out of *any* personal or real property of the Construction Company, indicates plaintiff then considered the judgment collectible by execution and not otherwise.

In the settlement embodied in the consent judgment, the Construction Company abandoned all rights under its cross action. Unless it barred plaintiff from asserting rights as an alleged attachment creditor, we do not perceive that the Construction Company received any consideration from the *settlement* embodied in the consent judgment.

The Construction Company was a North Carolina corporation on which personal service of process in this State was made. The jurisdiction of the court to enter the consent judgment did not depend upon the validity of the attachment.

The allegations of the verified complaint, on which plaintiff based his alleged right of attachment, include the indispensable allegation that the Construction Company acted "with intent to defraud." Hence, the Construction Company had a special interest in defeating the attachment. The sole benefit gained by the Construction Company from the settlement embodied in the consent judgment was plaintiff's abandonment of his alleged right of attachment, thereby eliminating the possibility of a finding that it had acted "with intent to defraud."

Questions as to the legal sufficiency of plaintiff's verified complaint and bond for attachment were determinable in the prior action; but a judicial determination thereof was obviated when all matters in controversy therein were resolved by the settlement embodied in the consent judgment. Hence, there is no occasion to discuss such questions.

"It is a settled principle of law in this State that a consent judgment is the contract of the parties entered upon the records with the approval and sanction of a court of competent jurisdiction, and that such contracts cannot be modified or set aside without the consent of the parties thereto, except for fraud or mistake, and that in order to vacate such judgment an independent action must be instituted." *Spruill v. Nixon,* 238 N.C. 523, 526, 78 S.E. 2d 323, and cases cited.

It is noted that the $6,000.00 bond executed by defendant herein as surety for the Construction Company in the prior action was not conditioned as prescribed by G.S. 1-440.39 but as set forth in paragraph 5 in the statement of facts. However, in view of our holding

that the consent judgment limited plaintiff's rights to a simple money judgment against the Construction Company, we pass, without discussion or decision, questions relating to the extent of plaintiff's right to recover on such $6,000.00 bond *if* he had established (which he did not) the validity of the attachment in the prior action.

Affirmed.